FIRST CONNECTICUT SMALL
BUSINESS INVESTMENT
COMPANY, Plaintiff,

v.

Paul E. RUARK, Jr., aka Paul E. Ruark
and Ellen B. Ruark, debtors,
Defendants.

Bankruptcy No. 5–80–00160.
Adv. No. 5–80–0051.

United States Bankruptcy Court,
D. Connecticut.

Oct. 23, 1980.

Mark J. Rosen, of Goldman & Rosen, P.
C., Bridgeport, Conn., for plaintiff.

John J. Graubard, of Graubard & Grau-
bard, Stamford, Conn., for defendants.

MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankrupt-
cy Judge.

This adversary proceeding is based on a
complaint for relief from the automatic
stay provided for by § 362 of the Bankrupt-
cy Code. On May 1, 1979, the plaintiff,
First Connecticut Small Business Invest-

ment Company (FCSBIC) commenced a state court action to foreclose a mortgage on property owned by the defendant–debtor, Paul E. Ruark (Ruark), located at 221 Three Mile Hill Road, Middlebury, Connecticut (property), and used as a residence by his wife. Three days prior to the hearing for judgment, set for March 10, 1980, Ruark filed a petition under Chapter 13 of the Bankruptcy Code. On May 9, 1980, FCSBIC filed its complaint for relief from stay in the bankruptcy court at Bridgeport, and a hearing on that complaint commenced on May 23, 1980 before Judge Robert E. Trevethan. After a continuance requested by the debtor without date, Judge Trevethan, in consequence of his impending retirement from the bench, signed an order on August 5, 1980 transferring the adversary proceeding to the Hartford bankruptcy court,[1] where a hearing was held on September 16, 1980. The parties stipulated that a transcript of the May 23, 1980 hearing before Judge Trevethan is to be used in lieu of recalling the one witness who testified on May 23, 1980.

FCSBIC claims to have shown that Ruark has no equity in the property, and that Ruark has not shown a need of the property for a reorganization.

The mortgage sought to be foreclosed by granting relief from stay in the instant adversary proceeding is a fourth mortgage subordinate to three senior mortgages with principal plus interest balances as of September 16, 1980 as follows:

1. Estate of Lena C. Hess ....... $18,719.91
2. Frank E. Hess ............. $48,384.74
3. FCSBIC ................. $15,413.03.

There is due and owing on FCSBIC's fourth mortgage principal and interest of $18,959.31. The total indebtedness attributable to the four mortgages above recited is $101,476.99, and interest on these mortgages accrues at the rate of $643.17 per month. Exhibits introduced at trial indicate that encumbrances junior to FCSBIC's fourth mortgage, in the nature of various mort-

gages, attachments, and judgment liens, total $82,786.63, which makes the sum of all encumbrances on the property $184,263.62.

Both parties put on expert testimony as to the value of the property. FCSBIC's appraiser testified at the May 23, 1980 hearing that the property had a value of $85,000.00. Ruark's appraiser testified that the fair market value was $145,000.00 as of September 16, 1980. Finding the comparable sales employed by Ruark's appraiser in determining the value of the property to be more appropriate than those utilized by FCSBIC's appraiser, the court concludes that $85,000.00 is too low a figure to represent fair market value of the property, and that $145,000.00 is nearer the proper value for the purposes of this proceeding.

Section 362(d) of the Bankruptcy Code provides two alternative bases for granting relief from the automatic stay imposed by subsection (a) of that section. Relief shall be granted

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

Few decisions, to date, have considered the issue of relief from stay in Chapter 13 proceedings. *Matter of Feimster*, 3 B.R. 11, 6 BCD 131 (Bkrtcy.N.D.Ga.1979); *In re McAloon*, 1 B.R. 766, 5 BCD 1207 (Bkrtcy.E.D. Pa.1980); *Matter of Garde*, 6 CLT No. 7 at 7 (B.C.Conn.1980); *Matter of Breuer*, 4 B.R. 499, 6 BCD 136 (Bkrtcy.S.D.N.Y.1980); *Matter of Epps*, 6 BCD 379 (B.C.S.D.N.Y. 1980). In *Feimster, supra*, it was held that although the debtor had no equity in the property sought to be foreclosed (a recreational motor home) and the property was not necessary to the debtor's economic rehabilitation, nevertheless, the conditions of § 362(d)(2)(A) and (B) do not apply to Chap-

---

1. Only the adversary proceeding is before the Hartford court. The Chapter 13 case remains in the Bridgeport bankruptcy court.

ter 13 proceedings inasmuch as Congress employed the word "reorganization" in § 362(d)(2)(B). That court held that since that word appears nowhere else in the Bankruptcy Code except Chapter 11, § 362(d)(2)(B) relates only to Chapter 11 reorganization cases and not to Chapter 13 cases. The court then went on to hold that the creditor in *Feimster* was adequately protected under the debtor's proposed plan which would pay the creditor more than the full value of the creditor's equity in the property. The court, in *McAloon, supra*, held that § 362(d)(2) did apply to the Chapter 13 case before it. However, it found that the debtor had equity in the residential property sought to be foreclosed, and that the property was necessary to the success of a proposed plan. This court, in *Garde, supra*, applied § 362(d)(2) without discussion where relief from stay was sought by a mortgagee to foreclose a mortgage on residential property. The debtors did not have title to the property, and occupied it on a month–to–month tenancy. They conceded that they had no equity therein, and failed to show in their proposed plan how the property was necessary to an effective reorganization. Relief from stay was granted to the mortgagee to proceed with its foreclosure action. In *Breuer, supra*, the court decided that where a debtor's proposed plan called for immediate payment of all arrearages on a first mortgage, and regular monthly payment of principal and interest thereafter, and where the first mortgagee who sought the relief from stay was protected by a cushion of $21,000.00 above its mortgage, the stay would be continued despite the fact that the debtor lacked equity in the property. The debtor was a professional photographer who maintained a studio and equipment in the residential property covered by the mortgage. Finally, in *Epps, supra*, the court granted relief from stay to two secured creditors on claims that they were not adequately protected pursu-

ant to § 362(d). The court stressed the fact that the debtor had not paid real estate taxes nor made mortgage payments on the property sought to be foreclosed for over two years, and the debtor's plan made no provision for satisfying these arrearages within a reasonable time. The court noted that part of the property sought to be foreclosed was the debtor's residence where he had, in effect, been living rent free.

█ From the foregoing discussion of available decisions by bankruptcy courts, it is apparent that there are, as yet, no generally accepted standards in applying the tests provided for by § 362(d) to determine whether relief from the automatic stay shall be granted. Except for *Feimster, supra*, the courts have usually considered both clauses of § 362(d) as applicable without distinguishing between them. I believe that in paragraphs (1) and (2) of § 362(d) Congress has provided true alternatives, and that there is no necessity for a bankruptcy court to find that the conditions stated in both (1) and (2) are present in order to grant relief from stay. This is indicated by the fact that the legislators employed the disjunctive *or* as the connective linking paragraphs (1) and (2), and eschewed the conjunctive *and*.[2] The explanations of § 362(d) contained in the House and Senate joint statement is in the following language:

Section 362(d) of the House amendment represents a compromise between comparable provisions in the House bill and Senate amendment. Under section 362(d)(1) of the House amendment, the court may terminate, annul, modify, or condition the automatic stay for cause, including lack of adequate protection of an interest in property of a secured party. Under section 362(d)(2) the court may *alternatively* terminate, annul, modify or condition the automatic stay for cause including inadequate protection for the creditor. The court shall grant relief

2. Even though rule of construction, § 102(5), provides " 'or' is not exclusive", the legislative history states the purpose of this rule is to allow a party to do either, or both, where "or" is used in the Code. "The party is not limited

to a mutually exclusive choice between the two alternatives." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 315; Senate Report No. 95-989, 95th Cong., 2nd Sess. (1978), U.S.Code Cong. & Admin.News, 1978, pp. 5787, 6272.

from the stay if there is no equity and it is not necessary to an effective reorganization of the debtor.

The latter requirement is contained in section 362(d)(2). This section is intended to solve the problem of real property mortgage foreclosures of property where the bankruptcy petition is filed on the eve of foreclosure. 124 Cong.Rec. H 11092–3 (Sept. 28, 1978); S 17409 (October 6, 1978). (Emphasis supplied)

■ I conclude that notwithstanding the contrary conclusion reached by the court in *Feimster, supra,* the employment of the term "reorganization" in § 362(d)(2)(B) does not mean that the 362(d)(2) test applies only to Chapter 11 proceedings and not to Chapter 13 proceedings. 2 *Collier on Bankruptcy* (15th ed.) in ¶ 362.07(2) at 362.48, in its discussion of § 362 assumes that § 362(d)(2) will apply in Chapter 13 cases even though it "will be of little practical value to creditors in reorganization cases since in most cases the property will be needed for an effective reorganization, . . .".[3]

■ I thus hold that for the purposes of determining relief from stay matters, the two tests provided for in § 362(d)(1) and (2) are alternative tests, and that a party need establish only one of the alternatives to support its claim for relief. Once a secured creditor has proven the debtor's lack of equity in the property, and the debtor has failed to prove necessity of the property for an effective plan, relief may be granted without any requirement that other cause, such as lack of adequate protection, be established by the creditor. If the *debtor* seeks to prove that adequate protection has been or can be afforded the secured creditor, the debtor must also allege and establish reasons why that being true, the court should deny relief from stay.

■ In this case, Ruark filed his Chapter 13 petition three days prior to a state court hearing on a foreclosure complaint which had been pending for nearly a year. Ruark has no equity in the property and has been in default for years on all of the first four mortgages encumbering the property. It further appears from Ruark's brief that no plan is presently on file with the Bridgeport court, and Ruark has failed to present any evidence that the property is necessary to any contemplated plan. Ruark does not reside at the property or use it in any business. The court holds that FCSBIC has borne its burden of proof pursuant to § 362(g)[4] on Ruark's lack of equity in the property, and Ruark has failed to bear his burden of proving that the property is necessary to any plan. Ruark raises arguments of adequate protection in his brief based on the possible "cushion" FCSBIC enjoys as to its mortgage.[5] Given the volatility of the current real estate market, it is by no means certain how secure the fourth mortgage may be. And it is obvious that the cushion is derived at the expense of other creditors, since Ruark has no equity. In all the previously discussed cases where relief from stay was denied, the courts did not allow the debtor to take advantage of the cushion at the expense of other creditors. In each instance the debtor made meaningful provisions for not worsening the position of creditors in general. The court has not been given any basis for denying this plaintiff the relief it seeks. Cf. *Loper v. Mulcahy,* 5 B.R. 558, 6 CLT No. 34 at 7 (Bkrtcy.Conn., 1980). Ruark, in his

---

3. Senate Bill S.658, the so-called Technical Amendments Bill, which passed the House of Representatives on September 22, 1980, will, if passed by the Senate, amend § 362(d)(2)(B) by inserting immediately after the word "reorganization" the phrase "in a case under Chapter 11 of this title or to an effective plan in a case under Chapter 13 of this title, as the case may be". 126 Cong.Rec. H 9292 (Sept. 22, 1980).

4. *Section 362(g).* In any hearing under subsection (d) . . . of this section concerning relief from the stay of any act under subsection (a) of this section–

> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property: and
> (2) the party opposing such relief has the burden of proof on all other issues.

5. Total prior encumbrances plus FCSBIC mortgage amounts to $101,476.99 and the value of the property is claimed to be $145,000.00. A cushion of $43,523.01 is alleged.

reply brief, requests continuance of the stay if only to permit him to file a plan. Under the circumstances as outlined herein, and given the more than seven months which has elapsed since Ruark filed his petition without producing a plan, the plaintiff is entitled to proceed with its action in the state court. Obviously, nothing determined herein deprives the debtor of his right to present all available arguments in the state proceeding. The request of the plaintiff, FCSBIC, for relief from stay is granted so that FCSBIC may pursue its foreclosure action, CV–79–0049015S, before the Superior Court for the Judicial District of Waterbury, and it is

SO ORDERED.

This memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 752 of the Rules of Bankruptcy Procedure.