In re Gilbert A. RHOADES, Sr. d/b/a Rhoades Enterprises and Blanche E. Rhoades, Debtors.

J.I. CASE CREDIT CORPORATION, Plaintiff,

v.

Gilbert A. RHOADES, Sr. d/b/a Rhoades Enterprises and Blanche E. Rhoades, Defendants.

Bankruptcy No. 82–124.

United States Bankruptcy Court, D. Vermont.

Sept. 13, 1983.

Edward Fitzpatrick, Essex Junction, Vt., for debtors.

Mark L. Sperry, Middlebury, Vt., for J.I. Case Credit Corp.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

### FACTS

On June 7, 1982, the debtors, as sole proprietors of an automobile salvage and repair business, jointly petitioned for relief under Chapter 13 of the Bankruptcy Code (Code). On February 14, 1983 the debtors amended their joint petition and modified the proposed Chapter 13 plan (Plan) at- tached thereto. On August 23, 1983, creditor J.I. Case Credit Corporation (Case) submitted a complaint for relief from the automatic stay of Code section 362, or in the alternative for adequate protection under Code Section 361.

Case holds a secured claim of $36,000.00 on the basis of its security interest in collateral previously valued by the court at $36,000.00. Case is to be paid $1,354.35 per month for 39 consecutive months commencing the 22nd month following the effective date of the Plan. The total amount of the deferred payments reflects the present value of Case's secured claim, computed as $36,000.00 plus interest thereon at 12% per annum for 21 months, the resultant sum ($43,560.00) thereafter amortized over 39 months at 12% interest. The gravamen of Case's complaint is that following confirmation of the Plan the value of its secured claim will exceed the value of the collateral, which is subject to diminution through ongoing depreciation—just as the $36,000.00 "principal amount" of this secured claim is subject to aggrandizement through accrual of interest.

During the pendency of this proceeding, Case will retain its lien on the collateral and the collateral will be insured by the debtors. The debtors have no equity in the collateral, the indebtedness with respect thereto, at the time of the filing of the petition initiating this case, being a gross balance of $43,564.00 on a closeout figure of $36,530.00.

## DISCUSSION

### THE OBJECTION TO THE PLAN

A secured creditor does not have an absolute veto power over confirmation of a Chapter 13 Plan under the Code. Code section 1325(a)(5) provides that the court shall confirm a plan despite objection by a secured creditor if the plan provides that such creditor retain his lien and the value (as of the effective date of the plan) of property to be distributed to such creditor is. not less than the allowed amount of the claim. In pertinent part, Code Section 1325 provides:

(a) the court shall confirm a plan if ... (5) with respect to each allowed secured claim provided for by the plan ... (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value as of the effective date of the plan of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim...

Code subsection 1325(a)(5)(B)—the "cram down" provision—operates in this proceeding to nullify Case's objection to the Plan, in that the Plan provides that Case shall throughout the proceeding retain the lien securing its claim, and the value of the property to be distributed to Case under the Plan on account of its claim is not less than the allowed amount of its claim.

■ Although the value of the machinery in which Case holds a security interest may well decline, through ongoing depreciation, below the amount of Case's allowed secured claim, Code section 1325(a)(5)(B)(i), which assures the holder of an allowed secured claim that its lien cannot be directly affected by a Chapter 13 plan without its consent, does not require that the holder of the allowed secured claim be protected from various indirect deleterious effects resulting from depreciation or deterioration of the collateral. There is no requirement that a Chapter 13 plan provide protection to the secured creditor against whatever diminution in value may result to the property securing the allowed secured claim in which the lien is retained. *Collier on Bankr.* (15th Ed.1979 rev. 1983) ¶ 1325.01 at page 1325–22. Section 1325(a)(5)(B)(i) merely requires a provision in the Plan for the retention of the lien. *Id.* As the Plan complies with the cram down requirements of subsection 1325(a)(5)(B), the fact that Case has not accepted the Plan is not fatal to confirmation of the Plan.

## THE REQUEST FOR RELIEF FROM STAY

Code section 362(d) and 362(g) govern the procedure for relief from the stay of Code section 362(a). Subsection (d) provides that "... the court shall grant relief from the stay ... (1) for cause, including the lack of adequate protection of an interest in property ... or (2) with respect to a stay of an act against property, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." Subsection (g) provides that "... the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues."

There is a divergence of opinion as to whether section 362(d)(2) applies to Chapter 13 proceedings. Some cases have held that the subsection does not apply to Chapter 13 filings. *See, e.g., In re Feimster,* 3 B.R. 11 (Bkrtcy.N.D.Ga.1979); *see also, In re Sulzer,* 2 B.R. 630 (Bkrtcy.S.D.N.Y.1980); *In re Youngs,* 7 B.R. 69 (Bkrtcy.D.C.Mass.1980). The contrary has been held in other cases. *See, e.g., In re Crouse,* 9 B.R. 400 (Bkrtcy.S. D.Tex.1981); *In re First Conn. Small Business Investment Co. v. Ruark,* 7 B.R. 46 (Bkrtcy.D.C.Conn.1980); *In re Zellmer,* 6 B.R. 497 (Bkrtcy.N.D.Ill.1980).

If subsection (d)(2) is applied in the instant matter, Case is not entitled to relief from stay for the reason that the collateral is essential to the operation of the debtor's business. Testimony adduced at the hearing established that the debtors used the collateral, equipment consisting of two loaders and a trailer, in daily operations, and that the debtors have no present ability to finance replacement equipment should they lose possession of the collateral. Thus, the conjunctive requirements of subsections (d)(2)(A) and (d)(2)(B) bar relief from stay under subsection (d)(2)—if that subsection applies to Chapter 13 cases.

■ The primary purpose of the automatic stay is to prevent the dissipation of the debtor's assets during the pendency of the bankruptcy proceeding, *Power-Pak Products, Inc. v. Royal-Globe Insurance Co.,* 433 F.Supp. 684, 686 (W.D.N.Y.1977); *In the Matter of Cuba Electric and Furniture Corp.,* 430 F.Supp. 689, 691 (D.Puerto Rico 1977); *Teledyne Industries, Inc. v. Eon Cor-*

*poration,* 373 F.Supp. 191, 203 (S.D.N.Y. 1977). The court, therefore, finds more persuasive the rational for the non-applicability to Chapter 13 proceedings of subsection (d)(2) than the rational for its applicability. If the subsection applies, a debtor who has no equity in property which is not necessary to consummate a Chapter 13 plan may be, through lift-stay actions, exposed to involuntary dispossession of such property. The purpose, however, of Chapter 13 is to enable individual debtors with regular incomes to develop and perform a plan for the repayment of debts over an extended period of time. *Matter of Breuer,* 4 B.R. 499, 501–502 (Bkrtcy.S.D.N.Y.1980). The emphasis is on providing individuals with regular incomes an alternative to liquidation. *In re Youngs,* 7 B.R. at 70. Hence, it is the ability of the individual debtors to furnish the creditor with the value of his claim, in the form of property or from current earnings, which is the key to the protection of the creditor under a Chapter 13 plan. Whether the collateral being retained by the debtor is necessary to the subsistence or rehabilitation of the Chapter 13 debtor, or whether the debtor has any equity in the collateral, are not factors of concern applicable or relevant to Chapter 13 proceedings. *In re Feimster,* 3 B.R. at 14.

As to whether the stay must be terminated under subsection 362(d)(1) "for cause," the court finds the reasoning of *In re Feimster,* 3 B.R. at 14, 15, compelling, and the facts apposite. In *Feimster,* the debt was $24,000.00 and the value of the collateral, being the amount of the secured claim, was $12,000.00. The 1325(a)(5)(B)(i) lien was to be retained by the secured creditor under the Chapter 13 plan, and the plan provided for payments to the creditor in excess of the amount of the secured claim. The *Feimster* court found no cause shown under 362(d)(1) why the stay should be terminated as to the secured creditor.

 This court notes that the instant Plan provides J.I. Case with deferred payments commencing no sooner than the beginning of the 22nd month following the effective date of the Plan. However, in view of the provision in the Plan for accrual of interest during the extension period at 12% per annum on the "principal amount" of Case's allowed secured claim, and for amortization of the resultant secured indebtedness of $43,560.00 at 12% interest during the pay-down period, this Court, like the court in *Feimster,* finds no cause under subsection 362(d)(1) to lift the stay imposed by section 362(a).

## THE REQUEST FOR ADEQUATE PROTECTION

There is no precise definition in the Code for the term "adequate protection" but the legislative intent inherent in the term is that the holder of an interest in property affected by the section 362(a) stay be provided with the "indubitable equivalent" of his interest in the stayed property. Code § 361(3). Adequate protection is compensatory in nature. *Roslyn Savings Bank v. Comcoach Corp.,* 698 F.2d 571, 7 CBC 2d. 1191, 1192 (2d Cir.1983); *In Re Murel Holding Corporation,* 75 F.2d 941 (2d Cir.1933) (Learned Hand, J.). The concept of adequate protection is intertwined with the notion of relief from stay "for cause" under subsection 362(d)(1). In finding no cause for relief under subsection (d)(1) the court was aware that Case is receiving deferred compensation with respect to the value of its lien; yet the deferred compensation is equivalent to the present value of the lien. Although Case is not receiving compensatory protection contemporaneously with the decline in value, due to depreciation, of the collateral, the Plan provides that Case is to receive in value essentially what Case bargained for. Under the Plan, Case is to be provided with the realization of the present value of its allowed secured claim. In a constitutional sense, Case has no claim to more than that. *See, Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 278, 61 S.Ct. 196, 199, 85 L.Ed. 184 (1940); *Collier on Bankr.* (15th ed. 1979 rev. 1983) ¶ 362.01 at page 362–15; *In re Roger,* 2 B.R. 679, 680, 685 (Bkrtcy.E.D.Va.1980); Code § 361 advisory committee note. In enacting the code, Congress recognized that there may

be situations in bankruptcy where giving a secured creditor a strict right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus section 361, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. House Report No. 95–595, 95th Cong., 1st Sess. 338 (1977); Senate Report No. 95–989, 95th Cong., 2nd Sess. 49, 53 (1978), U.S.Code Cong. & Admin.News 1978, 5787.

It is the view of the court that Case's retention of its lien on the collateral, and the payment provided by the debtors under their Plan, does provide "adequate protection of an interest in property of" this secured creditor.

## ORDER

In accordance with the foregoing,

IT IS HEREBY ORDERED that:

1. The request for relief from stay be and hereby is DENIED and,

2. The request for adequate protection is without merit and it is hereby DISMISSED.