No. 400 May 13, 2026 429

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID MICHAEL BAHR,
*Defendant-Appellant.*

Yamhill County Circuit Court
23CR45381; A184766

Ladd J. Wiles, Judge.

Submitted February 4, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

## AOYAGI, P. J.

Defendant was convicted of sexual offenses against two children. On appeal, he raises two assignments of error. First, he challenges the trial court's ruling that, if defendant testified, the state would be allowed to impeach him with evidence of a previous sexual offense against a 13-year-old girl, as relevant to his having a sexual interest in children, which ruling caused him not to testify. Second, defendant moved for a mistrial after one of the complainants referred to excluded evidence in her testimony, and defendant claims that the trial court erred in denying that motion. We affirm.

### FACTS

In 2023, defendant was charged with committing sexual offenses against two children in 2012 and 2013. Complainant T had been eight years old at the time, and complainant M had been 10 years old at the time.

Specifically, as to T, defendant was charged with first-degree unlawful sexual penetration for penetrating T's vagina with his finger (Count 1), first-degree sexual abuse for touching T's vaginal area (Count 2), and first-degree sexual abuse for touching T's buttocks (Count 6). Those charges arose from a single incident in 2012. While staying at defendant's mother's house, T went to sleep in defendant's bed, and defendant allegedly touched her buttocks, touched her vaginal area, and inserted his finger into her vagina.

As to M, defendant was charged with first-degree sodomy for engaging in oral sexual intercourse with M (Count 3); first-degree sodomy for engaging in oral sexual intercourse by forcible compulsion (Count 4); and first-degree sexual abuse for touching M's breast (Count 5). Those charges arose from a single incident in 2013. Defendant allegedly went into M's bedroom while she was brushing her three-year-old niece's hair, touched the bottom of M's breasts under her shirt, pulled down his pants, exposed his half-erect penis, and used his hand to push M's head toward his penis.

A jury found defendant guilty of Counts 2 and 5 as charged; found defendant guilty of the lesser included offense of attempt on Counts 1, 3, and 4; and acquitted him on Count

6. After merger, the court entered a judgment convicting defendant of attempted first-degree unlawful sexual penetration (Count 1), two counts of first-degree sexual abuse (Counts 2 and 5), and attempted first-degree sodomy (Count 3).

## ADMISSIBILITY OF PRIOR CONVICTION

Before trial, the state moved *in limine* for a ruling allowing it to put on evidence at trial of defendant's prior out-of-state conviction for misdemeanor third-degree assault with sexual motivation. The prosecutor explained that the evidence was relevant to defendant's sexual interest in children, because the victim was 13 years old at the time of the offense. He emphasized that the state wanted to use the evidence only to establish defendant's sexual interest in children and would not make any broader arguments about its relevance to the charged crimes, and he stated his intent to seek a limiting instruction, although he did not describe what limiting instruction he had in mind. In response, defense counsel argued that the evidence should be excluded under OEC 403 as more unfairly prejudicial than probative. As part of that argument, he urged the court to take into account that defendant had consistently denied the allegations and that this was not a case where defendant was claiming that the alleged touching occurred but was accidental or nonsexual. The trial court made a preliminary ruling that it would exclude the prior conviction because the victim did not intend to testify and her age at the time of the offense was not stated in the documentary evidence.

The case proceeded to a jury trial. Toward the end of trial, defense counsel mentioned in a colloquy with the court that he needed to consult with defendant regarding whether defendant was going to testify. As relevant to doing so, defense counsel asked the court how it would treat defendant's prior felony conviction for failure to register as a sex offender, specifically whether it would limit the state to referring to it as a nonperson felony conviction, versus disclosing the name of the offense to the jury. In that context, the court *sua sponte* stated, "He's also going to be subject to impeachment about his prior assault with sexual intent conviction that is—." Defendant sought clarification, expressing the view that the prior conviction involving the 13-year-old

could be used to impeach defendant if he testified "I would never do something like this" or the like, but not if his testimony was a "pure denial," such as "I didn't do this, I didn't do these things, I deny doing these things."

The court disagreed, indicating that it could still come in as propensity evidence. That prompted defense counsel to state, "If you would allow *** that kind of cross-examination, even if [defendant] stayed completely within the rails of simply denying these accusations and nothing else and didn't otherwise open the door with his own statements, I need to know that in order to counsel [defendant]—." The court confirmed that it would allow the prior sexual assault conviction into evidence if defendant testified, even if his testimony was a "straight-up denial." As for excluding the name of the failure-to-register conviction, the court noted, and defense counsel agreed, that that probably did not matter if the sexual assault conviction came into evidence.

The trial court later reaffirmed its ruling, pointing to *State v. Baughman*, 361 Or 386, 393 P3d 1132 (2017), as authority for admitting the prior sexual assault conviction for propensity purposes. Defense counsel consulted with defendant off the record, then reported to the court that defendant would not testify. The next morning, in discussing jury instructions, defense counsel put on the record that "the Court's ruling that my client's misdemeanor sex offense would have been fair game had he taken the stand was the reason why he's not testifying." Because defendant did not testify, nothing came into evidence regarding his prior convictions.

On appeal, defendant contends that the trial court abused its discretion under OEC 403 in ruling that the prior conviction could be used to impeach defendant if he testified. *See State v. Martinez*, 335 Or App 643, 654, 559 P3d 907 (2024), *rev den*, 373 Or 713 (2025) (*Martinez II*) (review of OEC 403 ruling is for abuse of discretion).[1] He argues that the evidence was minimally probative and highly unfairly

---

[1] There are several relevant "*Martinez*" cases. To minimize confusion, we use the same designations as used in *State v. Powers*, 341 Or App 728, 733, 737, 574 P3d 975 (2025). Note that the cases designated *Martinez I* and *II* involved the same defendant, whereas the case designated *Martinez III* involved a different defendant. *Id.* at 737 n 3.

prejudicial and that, "even if the state alleges that propensity evidence is relevant to prove what appears to be a 'permissible' inference like motive or sexual purpose, the trial court errs in admitting that evidence to prove that because the defendant committed a similar offense before, it is more likely that he committed the acts charges in the instant case—the classic propensity inference."

The state counters that, on this record, defendant can prevail on appeal only if the trial court allowing the state to impeach defendant with his prior sexual assault conviction would be an abuse of discretion regardless of the level of detail allowed and regardless of any limiting instructions that could have been given. The state points out that defendant did not make an offer of proof or otherwise make a record of how much detail would have been allowed into evidence regarding the prior offense or what limiting instruction would have been given. In the state's view, it would not violate OEC 403 to allow some cross-examination about the prior incident—at least enough to reveal that defendant had previously had sexual intercourse with a 13-year-old girl—with an appropriate limiting instruction as to how the evidence could be used by the jury.

We generally agree with the state's framing, given the procedural posture of this case. That is, we view the parties' representations to the trial court as sufficient to preserve the general issue for appeal, but we agree that any more nuanced analysis based on a more complete record is foreclosed by the failure to develop a more complete record. *Compare State v. Krieger*, 291 Or App 450, 456, 422 P3d 300, *rev den*, 363 Or 599 (2018) ("Under [OEC 103], no offer of proof is necessary when the nature of the excluded evidence is adequately reflected in the argument of counsel to the court."), *with State v. Busby*, 315 Or 292, 294-95, 844 P2d 897 (1993) (the failure to make any record of how the defendant would have testified was fatal to his claim of evidentiary error).

Accordingly, we proceed with the understanding that, had defendant taken the stand, he would have denied outright that either of the charged incidents occurred, and, on cross examination, the prosecutor would have sought to

establish that defendant has a sexual interest in children, using his prior conviction to impeach him, as relevant to proving that the touching alleged as first-degree sexual abuse was done with a sexual purpose. The state was not required to prove that defendant had a sexual purpose to prove first-degree unlawful sexual penetration, ORS 163.411, or first-degree sodomy, ORS 163.405, but did have to prove that he had a sexual purpose to prove first-degree sexual abuse under ORS 163.427(1)(a). *See* ORS 163.427(1)(a) (requiring "sexual contact"); ORS 163.305(5) (defining "sexual contact" as the touching of another person's sexual or intimate parts "for the purpose of arousing or gratifying the sexual desire of either party"). Finally, we understand that the state would have requested an appropriate limiting instruction, and we assume that the trial court would have given that instruction.

OEC 404(3) and (4) govern the admissibility of "other acts" evidence in criminal cases. OEC 404(3) generally prohibits using evidence of a prior act to prove a person's character and that the person acted in conformity with that character, *i.e.,* that the person's prior act shows a propensity to act in a given manner, although it may be used for other purposes, such as showing motive. OEC 404(3); *State v. Skillicorn*, 367 Or 464, 475-76, 479 P3d 254 (2021). A different rule applies, however, to criminal defendants. "Propensity evidence is admissible against a criminal defendant under OEC 404(4) if the evidence is relevant under OEC 401 and withstands OEC 403 balancing." *State v. Powers*, 341 Or App 728, 733, 574 P3d 975 (2025) (citing *State v. Davis*, 372 Or 618, 634-35, 553 P3d 1017 (2024) (footnote omitted)); *see* OEC 404(4) ("[i]n criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by" OEC 406 to OEC 412 and, to the extent required by the federal or state constitution, OEC 403; the rules of evidence relating to privilege and hearsay; and the state and federal constitutions).

Evidence is relevant under OEC 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." But under OEC 403, even relevant evidence "may" be excluded

"if its probative value is substantially outweighed by the danger of unfair prejudice." In reviewing an OEC 403 ruling regarding evidence of other acts, we utilize the framework articulated in *Martinez II*:

> "First, the court should parse the other 'acts' into constituent parts, where possible, to aid in determining the degree of character present in the proponent's theory of relevancy. Second, the court should consider the probative value of each constituent part of the evidence to determine whether its relevance relies on character reasoning expressly or by implication. Third, the court, in its discretion, may admit evidence that does not primarily or substantially derive its relevance from character-based propensity reasoning. Finally, whether a court acts within its permissible range of discretion to admit such evidence may depend on whether the court took action to mitigate any unfair prejudice, such as redacting inflammatory details, limiting the state's use of the evidence, and instructing the jury on how it may consider the evidence."

*Martinez II*, 335 Or App at 654-55.

Here, defendant's prior conviction can be effectively parsed into two parts, namely (1) that defendant had sexual intercourse with a 13-year-old girl when he was 22 years old, and (2) the specific circumstances of that incident, including that defendant and his friend gave the girl alcohol, that she vomited and lay down, and that defendant then digitally penetrated her and had sexual intercourse with her while she lay frozen in fear. Because we agree with the state that defendant did not make a record showing that the trial court would have allowed the details of the prior incident into evidence—details that defendant rightly describes as inflammatory—we assume for purposes of our analysis that the court would have allowed only evidence that defendant had sexual intercourse with a 13-year-old girl when he was 22 years old, which is the most minimalist version of the facts that could be admitted. *Cf. Powers*, 341 Or App at 739 (observing that the trial court made "significant efforts to mitigate the unfair prejudice" by admitting only the fact of conviction, the victim's age, and her relationship to the defendant and by excluding "all testimony about the underlying conduct").

We proceed to consider whether the relevance of that evidence "relies on character reasoning expressly or by implication." *Martinez II*, 335 Or App at 654. It clearly does. As both parties acknowledge, defendant having had sexual intercourse with a 13-year-old in the past is relevant only to establish that he has a general sexual interest in children, *i.e.*, a propensity to be sexually interested in children. The state describes the evidence as "plainly relevant" to prove "defendant's sexual interest in children."

We next consider whether the evidence derives its relevance "primarily or substantially *** from character-based propensity reasoning." *Id*. at 654-55. Defendant argues that evidence that he has a general sexual interest in children is "solely relevant for propensity purposes." He argues that "[t]he probative value of the evidence derived solely from its likelihood to convince the jury that defendant had a propensity to act in conformity with the character of a child abuser."

We have repeatedly recognized that evidence of a defendant's general sexual interest in children derives its relevance primarily, if not entirely, from propensity reasoning, even when offered as relevant to whether the defendant had a sexual purpose in committing the charged acts. *State v. Reed*, 348 Or App 116, 121, ___ P3d ___ (2026) ("In recent years, we have consistently held that evidence of a defendant's sexual interest in children relies upon propensity reasoning for its relevance."); *State v. Martinez*, 341 Or App 10, 21, 572 P3d 1081, *rev den*, 374 Or 421 (2025) (*Martinez III*) ("offering such evidence relies primarily upon propensity reasoning"). When the state seeks to use a defendant's sexual interest in children as evidence that he acted with a sexual purpose in a particular instance, it is necessarily relying on propensity reasoning. *Powers*, 341 Or App at 737; *see also State v. Travis*, 344 Or App 496, 504, 580 P3d 889 (2025), *rev allowed*, 375 Or 109 (2026) ("[O]ther-acts evidence offered to establish a defendant's sexual interest in children is propensity evidence because it relies on an intermediate character inference."). The idea is that the defendant has a sexual interest in children generally and thus has a "sexual predisposition [that] makes it more likely that

they acted with a sexual purpose in the charged offense."
*Estrada-Vargas*, 342 Or App 374, 380, 576 P3d 985 (2025),
*rev den*, 374 Or 698 (2026) (internal quotation marks omit-
ted). To put it another way, a defendant having a general
sexual interest in children does not make it any more or less
likely that he committed a particular act or that he had a
sexual purpose in committing a particular act, except inso-
far as a person with a sexual interest in children is more
likely to have sexually abused a child than someone without
a sexual interest in children. *See State v. Champagne*, 341
Or App 343, 357, 573 P3d 412 (2025), *rev den*, 374 Or 698
(2026) ("[T]here is an undeniable element of propensity rea-
soning involved in asserting that, because a defendant acted
with sexual purpose in the past, it is more likely that he also
did so in the charged instance.").

    In most cases, the fact that evidence derives its rele-
vance primarily or entirely from propensity reasoning would
require its exclusion under OEC 403. *Powers*, 341 Or App at
739 ("[I]t would appear that after *Davis*, as a general rule,
we can affirm the admission of propensity evidence under
OEC 403 only if it does not primarily or substantially derive
its relevance from character."). "However, we have concluded
that, in the specific context of a child sexual abuse case, evi-
dence of a defendant's prior bad acts against a different vic-
tim, although it relies primarily upon propensity reasoning,
is not necessarily impermissible." *Id.* (internal quotation
marks omitted); *see also id.* at 740 (citing *State v. Williams*,
357 Or 1, 17, 346 P3d 455 (2015), for the proposition that
"historical exclusions regarding propensity evidence do not
necessarily extend to child sexual abuse cases"). Its admis-
sibility depends on "the extent to which the evidence was
offered to establish that defendant's actions, if proven to have
occurred, were done for a sexual purpose versus merely to
establish that defendant is a bad person and thus was more
likely to engage in the charged conduct." *Estrada-Vargas*,
342 Or App at 381 (internal quotation marks omitted).

    Thus, we have essentially divided the use of "sexual
interest in children" evidence into two categories for admis-
sibility purposes. In the first category, a trial court allows
the jury to consider the defendant's general sexual interest

in children in deciding whether the defendant committed the charged crimes, without restriction. We held in *Travis*, a case now on review in the Supreme Court, that it was an abuse of discretion under OEC 403 to allow evidence of a sexual interest in children to be used in that manner. *Travis*, 344 Or App at 507-10 (holding that the trial court abused its discretion under OEC 403 in admitting evidence of the defendant's sexual interest in children, where the state was not required to prove sexual purpose as an element of the charged offenses, such that it was necessarily admitted only to show that defendant was more likely to have committed the charged act).

In the second category, a trial court instructs the jury not to consider the defendant's general sexual interest in children in deciding whether the defendant engaged in the charged conduct (sexual contact or the like), but allows the jury to consider that evidence for a more limited purpose *if* it finds that the defendant engaged in the charged conduct. Under such an instruction, the jury must first decide whether the defendant engaged in the charged conduct (sexual contact or the like) and then, and only then, may the jury consider the defendant's general sexual interest in children, solely as relevant to whether the defendant engaged in that conduct *with a sexual purpose*. *See Powers*, 341 Or App at 731 (describing such an instruction); *cf. State v. Turnidge*, 359 Or 364, 445, 374 P3d 853 (2016) (explaining that a similar limiting instruction is necessary when "other acts" evidence is conditionally relevant—"that is, [when] its relevancy depends on whether the factfinder first agrees that the defendant committed the charged criminal act"). For ease of reference, we will refer to that as a "sexual purpose only" instruction.

We have addressed the admission of evidence of a defendant's sexual interest in children solely for use in deciding whether the charged conduct was committed with a sexual purpose on several occasions. In *Martinez II*, we reversed the defendant's convictions where evidence of his sexual interest in children had been established through detailed information about his prior sexual abuse of another child, and where having a sexual purpose was a required element of some of the current charges but the trial court had not given a sexual-purpose-only instruction. 335 Or

App at 655-62. However, we left open the possibility that at least the bare facts of the prior abuse could be admitted at his retrial with a sexual-purpose-only instruction. *Id*.

Then, in *Powers*, we essentially reached the issue left open in *Martinez II*. The defendant was charged with four sex crimes against a child, L—first-degree unlawful sexual penetration for penetrating L's vagina with his finger, first-degree sodomy for engaging in anal sexual intercourse with L, attempted first-degree rape for attempting to engage in sexual intercourse with L, and first-degree sexual abuse for touching L's genitals. *Powers*, 341 Or App at 730.[2] He denied committing any of the charged acts, denied ever touching L for a sexual purpose, and tried to explain away allegations made by L that painted a larger picture of his acting sexually toward her but did not go directly to the charged acts (such as his allegedly rubbing his penis on her back and his allegedly showing her pornography). *Id*. at 731. At trial, the court admitted evidence that the defendant had a prior conviction for attempted first-degree sexual abuse of H, his adopted daughter, for acts that occurred when she was 13 or 14 years old. *Id*. at 731. The trial court gave a very clear sexual-purpose-only limiting instruction, however, stating that, before considering evidence of defendant's prior bad acts, the jury had to first decide whether defendant touched a sexually intimate part of L; if so, "then, and only then," could it consider the evidence and only "for the limited purposes of its bearing, if any, on whether defendant acted with a sexual purpose." *Id*. (brackets in *Powers* omitted). We held on appeal that the court did not abuse its discretion under OEC 403 in allowing the other-acts evidence under those circumstances. *Id*. at 740.

We reached the same result in *Estrada-Vargas* and *Champagne*. In *Estrada-Vargas*, the defendant was charged with four sexual offenses against a child, based on two separate

_____

[2] Our original decision in *Powers* was vacated by the Oregon Supreme Court and the case remanded for reconsideration in light of an intervening case. *See State v. Powers*, 323 Or App 553, 523 P3d 1112 (2023), *vac'd*, 372 Or 812, 558 P3d 847 (2024). The original decision contains a full statement of the facts, which we essentially readopted by reference in our remand opinion. 341 Or App at 730. To avoid creating confusion by citing a vacated opinion, we cite the remand opinion for the facts, but some of the details come from the vacated opinion.

but essentially identical incidents in which he removed the child's pants and underwear and inserted his fingers into her vagina, then removed his own pants and held his penis while touching her. 342 Or App at 375. The trial court admitted evidence that the defendant previously touched a different child's vagina over her clothes, as relevant to the sexual-purpose element of the charged offenses. *Id*. at 375, 381. We held that it was not an abuse of discretion under OEC 403 to admit that evidence—which, as described, appears to have been limited to the bare details of the prior act—because the prior act was less inflammatory, and because the court gave a limiting instruction so that the jury would consider it only as relevant to whether the defendant had a sexual purpose for the charged conduct, not as relevant to whether he engaged in the charged conduct.[3] *Id*. at 381-83. In *Champagne*, the defendant was charged with first-degree sexual abuse and other crimes against two children,[4] and we held that it was not an abuse of discretion under OEC 403 to allow into evidence that he had previously sexually abused another child and pleaded guilty to two counts of first-degree sexual abuse of that child, where the other-acts evidence was not detailed and the jury was instructed to consider that evidence only as relevant to whether the defendant had a sexual purpose in committing the alleged acts. 341 Or App at 344-46, 359.

---

[3] We observe that the limiting instruction given in *Estrada-Vargas* was significantly different from the one given in *Powers*, and, at least as quoted, it is unclear that it actually limited the jury's consideration of the evidence as intended. *Compare Estrada-Vargas*, 342 Or App at 382 ("At the omnibus hearing, the state asked that, if the court admitted the evidence, it provide a limiting instruction to the jury that 'serves to tell the jury that they are not to consider [A's] testimony for the purposes of whether [defendant] actually did what he is accused to have done to [Y].'" (Brackets in *Estrada-Vargas*.)), *with id*. at 376 (describing the instruction given as allowing the jury to consider the other-acts evidence as relevant to whether the defendant "has a sexual interest in children" and not "for any other purpose"). The defendant in *Estrada-Vargas* assigned error only to the admission of the other-acts evidence, however, and did not challenge the wording of the specific limiting instruction given. Because that issue appears not to have been contested, we caution that *Estrada-Vargas* should not be read as endorsing the specific instruction given in that case.

[4] Our opinion in *Champagne* does not detail the basis for the first-degree sexual abuse charges in that case. But, in general terms, the defendant was charged "with multiple sexual offenses, including first-degree sexual abuse," against two children, ages six and nine, and the trial evidence "was that defendant would begin by giving the girls back rubs or 'belly rubs' and then progress to digital penetration, oral sexual contact, and sexual intercourse." *Champagne*, 341 Or App at 344.

Most recently, we reached a similar result in *Reed*. The defendant in that case was charged with sexually abusing two children. 348 Or App at 117. Applying OEC 404(4) and OEC 403, the trial court allowed the admission of evidence that the defendant had been convicted of rape 20 years earlier, when he was in his early 20s, for having sex with a 15-year-old girl, to establish that he had a general sexual interest in children, as relevant to whether he acted with a sexual purpose in the charged case. *Id.* at 117-19. Sexual purpose was particularly significant in *Reed* because the defendant had admitted to some charged acts but claimed they were nonsexual, while denying outright the patently sexual acts. *Id.* at 117. The defendant ultimately opted for a bench trial, so no jury instruction was given, but the record indicated that the trial court understood the evidence as being relevant only to whether the defendant had a sexual purpose in committing the charged acts. *Id.* at 129-30. Under those circumstances, the trial court did not abuse its discretion under OEC 403 in admitting the evidence. *Id.* at 130.

This case falls into the second category of cases, or at least we must assume that it does given the limited record before us. The charges against defendant included three counts of first-degree sexual abuse, which is a crime that requires the state to prove that defendant acted with a sexual purpose. Specifically, the state had to prove that defendant acted with a sexual purpose in touching T's vaginal area (Count 2), touching T's buttocks (Count 6), and touching M's breast (Count 5). For the reasons already explained, we must assume that, if defendant had testified, the trial court would have allowed into evidence only the bare facts of defendant's prior conviction for sexual assault of a 13-year-old girl. We must also assume that the trial court would have given a sexual-purpose-only instruction to the jury. The prosecutor stated his intention to request an appropriate limiting instruction, and, absent a more developed record, we assume that it would have been a sexual-purpose-only instruction.[5] That brings this case directly in line with *Powers*, *Estrada-Vargas*, *Champagne*, and *Reed*.

---

[5] In arguing for the admissibility of the evidence, the prosecutor represented to the trial court that he was "not going to be asking the jury to make any

To the extent that defendant argues that OEC 403 balancing should come out differently when the defendant outright denies the charged acts—as distinct from a situation in which the defendant admits that the charged act itself occurred but claims that the touching was accidental or otherwise nonsexual—we do not find support for that distinction in the current case law. For example, in *Powers*, the only charge that required the state to prove a sexual purpose was the first-degree sexual abuse charge based on the defendant touching L's genitals, and, although defendant did try to explain away certain *uncharged* conduct alleged by L, he never claimed any accidental touching of L's genitals. 341 Or App at 730-31, 738 n 5. Nor did most of the other cases discussed involve a defense of accidental touching. We do not mean to suggest that trial courts cannot consider the defense theory when conducting OEC 403 balancing to decide whether to admit other-acts evidence as relevant to proving the defendant's sexual purpose—to the contrary, they should, particularly as relevant to the state's need for the evidence. Our case law demonstrates, however, that in cases in which the state must prove that the defendant acted with a sexual purpose, if the jury is not exposed to needlessly inflammatory facts about prior conduct, and the jury is properly instructed, a trial court will typically have the discretion to admit the evidence.

As for defendant's argument that the evidence did not really show a sexual interest in children because the prior conviction involved a 13-year-old girl, whereas T was eight years old and M was 10 years old, we are unpersuaded. Defendant describes the 13-year-old as "presumably pubescent," assumes that both T and M were prepubescent, and argues that that difference renders the prior incident "minimally relevant." Although T may have been prepubescent at eight years old, it would be speculative to make assumptions

---

decisions about [defendant's] guilt in [this case]"; that he was "not going to say that he acted this way previously, so you must find that he acted in conformity with those prior events, in this case"; that he was "not going to be saying that because he did this, you have to believe that he acted that way previously"; that "it will be introduced as evidence of his sexual interest in children"; and that he would "ask the Court for a limiting instruction on that" because he "intend[ed] to be very specific about how that evidence will be presented to the jury and what purpose they may consider it for."

about M's state of physical development at age 10 or the prior victim's state of physical development at age 13, given differences between individual children. In any event, there is no bright-line rule of the sort that defendant is suggesting, based on the multi-year event that is puberty, nor is the difference in ages here an extreme one. The age of the prior victim did not make it an abuse of discretion for the trial court to rule as it did.

On this record, we conclude that the trial court did not abuse its discretion in ruling as it did on the admissibility of defendant's prior conviction to establish his sexual interest in children, as relevant to showing that he acted with a sexual purpose toward T and M. In reaching that conclusion, because of the posture in which this case comes to us, we assume that the trial court would have admitted only the bare facts of the crime of conviction and would have given a limiting instruction directing the jury to consider that evidence only it if first found that defendant engaged in the conduct charged as first-degree sexual abuse, and then only as relevant to whether defendant acted with a sexual purpose.

## DENIAL OF MISTRIAL

Defendant next challenges the trial court's denial of his motion for mistrial, which occurred during M's testimony at trial. We review the denial of a mistrial for abuse of discretion. *State v. Osorno*, 264 Or App 742, 747, 333 P3d 1163 (2014).

Before trial, the court ruled on OEC 403 grounds that it would exclude at trial any evidence that complainant M once saw defendant pick up her three-year-old niece and take her to the bathroom for "a significant period of time."

At trial, during M's testimony, the prosecutor asked M why she had not immediately disclosed a particular detail of the charged incident (defendant using his hand to push M's head toward his penis) to her mother in 2013. M responded that she was more concerned about her niece at the time, stating, "It was a big deal about my niece because I felt like she needed more attention to the fact of what happened to her." Defendant objected, and the matter

was discussed outside the presence of the jury, at which time defendant also moved for a mistrial. The trial court denied a mistrial, but it sustained the evidentiary objection. When the jury returned, the court struck M's answer from the record and instructed the jury to disregard it.

We agree with the state that the court did not abuse its discretion by denying a mistrial. When a jury hears evidence that it should not have, the trial judge is in the best position "to assess and to rectify the potential prejudice to the defendant." *State v. Farrar*, 309 Or 132, 164, 786 P2d 161, *cert den*, 498 US 879 (1990). Here, the trial court took appropriate steps to address the issue. It sustained defendant's objection and immediately struck the testimony and instructed the jury to disregard it. *See State v. Thompson*, 328 Or 248, 270-71, 971 P2d 879, *cert den*, 527 US 1042 (1999) (an immediate curative instruction cured the erroneous admission of evidence where there was nothing to overcome the presumption that jurors follow a court's instructions). This is not a case where what was said was so prejudicial that it could not be undone. *See State v. Muniz*, 332 Or App 56, 63, 548 P3d 172, *rev den*, 372 Or 763 (2024) (acknowledging that there are some cases where statements are so prejudicial that, "as a practical matter, the bell once rung, cannot be unrung" by a curative instruction (internal quotation marks omitted)). M's statement was vague and lacking in any detail. Indeed, it is recognizable as an allusion to the excluded evidence only if one is aware of the excluded evidence, which the jury was not. The trial court acted within its discretion in denying a mistrial.

Affirmed.